**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

TONY CORMIER                                                 CIVIL ACTION
DOC # 278001

VERSUS                                                        17-241-SDD-EWD

JOHN BEL EDWARDS, ET AL.

<u>**RULING**</u>

This matter is before the Court on the *Motion for Summary Judgment*[1] filed by

Defendants, Secretary James LeBlanc ("Secretary LeBlanc"), Warden Tim Hooper

("Warden Hooper"), Dr. Raman Singh, Dr. Preety Singh, and Elizabeth Britton, N.P.

("Britton") (or collectively "Defendants"). Plaintiff, Tony Cormier ("Plaintiff"), has filed an

*Opposition*[2] to Defendants' motion, to which Defendants filed a *Reply*.[3] For the following

reasons, the Court finds that Defendants' motion should be granted.

**I.      FACTUAL BACKGROUND**

During the relevant time period, Plaintiff was incarcerated at Elayn Hunt

Correctional Center ("EHCC") in St. Gabriel, Louisiana.[4] Plaintiff is a fifty-seven year old

male who was originally diagnosed with Hepatitis C ("HCV") by Nurse Practitioner

Elizabeth Britton on October 31, 2012.[5] Plaintiff was subsequently transferred from Dixon

Correctional Center to EHCC pursuant to a medical transfer request based on Plaintiff's

---

[1] Rec. Doc. No. 77.
[2] Rec. Doc. No. 81.
[3] Rec. Doc. No. 85.
[4] Rec. Doc. No. 77-2, p. 1.
[5] Rec. Doc. No. 77-2, p. 4.
51787

HCV diagnosis.[6]  Beginning on November 6, 2012, Plaintiff was admitted to the Liver Clinic at EHCC and his condition was monitored by EHCC staff.[7]  On September 4, 2014, Nurse Practitioner Britton evaluated Plaintiff and determined that he was not a good candidate for treatment with PEG-Intron and Ribavirin, two common forms of treatment for HCV at the time.[8] That determination was based on the fact that Plaintiff presented with multiple co-morbidities, including "hypertension, asthma, GERD, a right inguinal hernia. . .COPD, dysthymia, systhyma, generalized anxiety disorder, and antisocial personality disorder,"[9] that had the potential to complicate or contraindicate those forms of treatment. The Liver Clinic staff ordered Plaintiff to stop smoking and start a low sodium diet in support of their treatment efforts.[10]

Plaintiff continued to be monitored by Liver Clinic staff until, on March 2, 2017, Britton decided to administer a battery of tests to determine if Plaintiff could be treated with a Direct Acting Antiviral ("DAA"), a new type of HCV drug recently approved by the Food and Drug Administration.[11] On June 15, 2017, Plaintiff was cleared for treatment with such a drug. His twelve-week course of Epclusa, the specific DAA he was prescribed, began on January 15, 2018, after this suit was filed.[12] Bloodwork taken at the end of the course of treatment detected no HCV; in other words, Plaintiff was cured of Hepatitis C.[13]

Plaintiff maintains that he was denied effective treatment for HCV from the time of his diagnosis in October 2012 until he began treatment with Epclusa on January 15,

---

[6] Rec. Doc. No. 77-5, p. 199.
[7] Rec. Doc. No. 77-2, p. 2.
[8] Rec. Doc. No. 77-2, p. 3.
[9] Rec. Doc. No. 77-1, p. 11.
[10] Rec. Doc. No. 77-4, p. 298; Rec. Doc. 77-7, p. 5.
[11] Rec. Doc. No. 77-2, p. 2.
[12] *Id.* at. p. 3.
[13] *Id.* at p. 3.
51787

2018,[14] and argues that this denial of medical treatment violated his constitutional rights under the Eighth Amendment to have his serious medical needs met.  Plaintiff filed this lawsuit against Defendants pursuant to 42 U.S.C. § 1983, alleging that the Defendants were deliberately indifferent to his medical needs in violation of his Eighth Amendment constitutional rights.  Plaintiff also asserts claims of supervisory liability against Defendants LeBlanc, Hooper, Preety Singh, and Raman Singh.  Defendants have moved for summary judgment on all claims, arguing that Plaintiff's claims are unsupported by the record evidence and, alternatively, that the Defendants are entitled to qualified immunity.

## II.    LAW AND ANALYSIS

### A.  Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[15]  "When assessing whether a dispute to any material fact exists, we consider all of the evidence in the record but refrain from making credibility determinations or weighing the evidence."[16]  A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case."[17]  If the moving party satisfies its burden, "the non-moving party must show that summary judgment is inappropriate by setting 'forth specific facts showing the existence of a genuine issue concerning every essential component of its case.'"[18]  However, the

---

[14] Rec. Doc. No. 81, pp. 1-2.

[15] Fed. R. Civ. P. 56(a).

[16] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008).

[17] *Guerin v. Pointe Coupee Parish Nursing Home*, 246 F.Supp.2d 488, 494 (M.D. La. 2003)(quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(en banc)(quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25, 106 S.Ct. at 2552)).

[18] *Rivera v. Houston Independent School Dist.,* 349 F.3d 244, 247 (5th Cir. 2003)(quoting *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998)).

51787

non-moving party's burden "is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence."[19]

Notably, "[a] genuine issue of material fact exists, 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[20] All reasonable factual inferences are drawn in favor of the nonmoving party.[21] However, "[t]he Court has no duty to search the record for material fact issues. Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim."[22] "Conclusory allegations unsupported by specific facts … will not prevent the award of summary judgment; 'the plaintiff [can]not rest on his allegations … to get to a jury without any "significant probative evidence tending to support the complaint."'"[23]

## B. Deliberate Indifference to Medical Needs

To establish liability in connection with a claim for deliberate medical indifference, a prisoner-plaintiff must be able to show that appropriate medical care has been denied and that the denial has constituted "deliberate indifference to serious medical needs."[24] "Deliberate indifference is an extremely high standard to meet."[25] In order to prevail, the plaintiff must show that the defendant "refused to treat him, ignored his complaints,

---

[19] *Willis v. Roche Biomedical Laboratories, Inc.,* 61 F.3d 313, 315 (5th Cir. 1995)(quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[20] *Pylant v. Hartford Life and Accident Insurance Company*, 497 F.3d 536, 538 (5th Cir. 2007)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

[21] *Galindo v. Precision American Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985).

[22] *RSR Corp. v. International Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010).

[23] *Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, 713 (5th Cir. 1994)(quoting *Anderson*, 477 U.S. at 249).

[24] *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Johnson v. Treen*, 759 F.2d 1236, 1237 (5th Cir. 1985).

[25] *Domino v. Texas Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001).
51787

intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs."[26]  Further, the plaintiff must establish that the defendant possessed a culpable state of mind.[27]  For a prison official to be held liable, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."[28]  "Mere negligence, neglect, or medical malpractice" does not constitute deliberate indifference.[29]  Even "gross negligence" does not establish deliberate indifference.[30]  Rather, "subjective recklessness as used in the criminal law" is the appropriate standard for "deliberate indifference" under the Eighth Amendment.[31]  The mere delay of medical care can also constitute an Eighth Amendment violation but only "if there has been deliberate indifference [that] results in substantial harm."[32]

Defendants contend Plaintiff has failed to demonstrate deliberate medical indifference that rises to a constitutional violation because he has failed to demonstrate that the Defendants refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any conduct that reveals a wanton disregard for his serious medical needs.[33]  Defendants argue that Plaintiff alleges only that he was unsatisfied with his medical care, *i.e.*, not prescribed his drug of choice at the time of his choice, not that he was not provided medical care.  Plaintiff primarily complains that he did not receive a DAA drug to treat his HCV when such drugs first became available on the market; thus,

---

[26] *Id.* (quoting *Johnson*, 759 F.2d at 1238).
[27] *Farmer v. Brennan*, 511 U.S. 825, 838 (1994)(citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)).
[28] *Id.* at 837.
[29] *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991).
[30] *Hernandez v. Tex. Dep't of Prot. and Reg. Servs.*, 380 F.3d 872, 882 (5th Cir. 2004).
[31] *Farmer*, 511 U.S. at 839-40.
[32] *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006).
[33] Rec. Doc. No. 77-1, pp. 6-7 (citations and quotation marks omitted).
51787

he argues, Defendants were deliberately indifferent to his medical needs. Accordingly, Defendants maintain that Plaintiff's case is not based on a constitutional deprivation but a disagreement with medical staff regarding the treatment Plaintiff received.

Plaintiff maintains that, from his diagnosis in October 2012 until January 15, 2018, when he was prescribed Epclusa, Defendants "simply 'monitored' [his] condition"[34] while his HCV "went untreated."[35] Plaintiff claims that this delay in treatment allowed his condition to progress to Stage 3 HCV by August 2016, causing him "considerable mental anguish."[36] Plaintiff does not address the record evidence establishing that he was not prescribed one of the older generation of HCV drugs because of the above-mentioned "co-morbidities that precluded him from receiving"[37] such drugs before the DAAs became available. Further, Plaintiff's medical records demonstrate that he was, in fact, provided with medical treatment in connection with his HCV. After he received his diagnosis in the Liver Clinic at EHCC, he was evaluated by Nurse Britton on many subsequent occasions. On September 4, 2014, Britton noted in her record of their visit that Plaintiff was "not likely a cirrhotic" and that he was "not a good candidate" for the older generation of HCV drugs.[38] The record is replete with evidence that Plaintiff subsequently had frequent monitoring visits to the Liver Clinic.[39]

Britton and Dr. Singh have both testified that DAA drugs became available at EHCC in or around October 2016.[40] On December 14, 2017, Britton wrote in her notes

---

[34] Rec. Doc. No. 81, p. 2.
[35] Rec. Doc. No. 81, p. 2.
[36] Rec. Doc. No. 81, p. 2.
[37] Rec. Doc. No. 77-1, p. 8.
[38] Rec. Doc. No. 77-5, p. 13.
[39] See Rec. Doc. Nos. 77-4, 77-5, 77-6, 77-7, 77-8, 77-9, 77-10, 77-11, 77-12.
[40] Rec. Doc. No. 77-14 at 34 (Deposition of Elizabeth Britton at 33); Rec. Doc. No. 77-13 at 14 (Deposition of Dr. Raman Singh at 13).
51787

that Plaintiff was a "candidate for DAA" and ordered labs to be performed that would determine his eligibility for DAA treatment.[41] After the labs came back, Plaintiff was prescribed a twelve-week course of Epclusa; Plaintiff signed a Hepatitis C Therapy Treatment Agreement on January 11, 2018.[42]

Dr. Raman Singh testified in a deposition that, around 2013 or 2014, the FDA approval process for "new drugs" for HCV treatment was completed, and Harvoni was one of the first drugs out.[43] Dr. Singh testified that Harvoni has around a 95% success rate with very little side effects.[44] Dr. Singh explained how the medical community assessed the performance of the drugs before reaching conclusions, as was done before in assessing HIV drug protocols,[45] and testified that, "as of today, [these drugs] are the standard of care."[46]

Dr. Singh was asked whether the high costs of drugs like Harvoni was a major concern for the DOC, and he responded that "[i]t was one of many concerns," with other concerns relating to lacking information based on the newness of the drugs and patient selection criteria.[47] Dr. Singh explained how the introduction of these new drugs would require training for professionals, particularly at Elayn Hunt where only one nurse practitioner and a part-time clinician were treating inmates with hepatitis C.[48] Further, the medical staff would have to work with the pharmacy regarding acquiring the drugs, and

---

[41] Rec. Doc. No. 77-7, p. 5.
[42] Rec. Doc. No. 77-7, p. 13.
[43] Rec. Doc. No. 81-4, p. 15, lines 10-14.
[44] *Id.* at lines 18-20.
[45] *Id.* at p. 17-19.
[46] *Id.* at pp. 19, line 25 – p. 20, line 1.
[47] *Id.* at p. 24, line 6.
[48] *Id.* at pp. 24-25.
51787

staff would have to formulate an "efficient patient education model."[49]  Dr. Singh also explained that, leading up to the implementation of this new drug protocol in October 2016, medical staff collected data and created a database to determine which of the 5,000 HCV inmates in the DOC, with the most serious liver damage and highest levels of fibrosis, would receive the new treatment first.[50]

Considering the undisputed facts of this case, the totality of Plaintiff's medical records, the summary judgment evidence presented by the Parties, and the applicable law and jurisprudence, the Court finds that Plaintiff has failed to demonstrate that he suffered a constitutional deprivation.  Applying the law to the facts of this case, Plaintiff has failed to demonstrate that genuine issues of fact exist regarding his claim of deliberate indifference to his serious medical needs.

That Plaintiff was not prescribed a DAA drug, his preferred treatment, as soon as it was on the market, does not rise to the level of a constitutional violation.  As the court stated in *Leonard v. Daniel*, "[t]he Eighth Amendment does not guarantee an inmate his choice of treatment or the right to dictate the type or dosage of medication prescribed to him.[51] In fact, the Fifth Circuit has held that 'deliberate indifference is especially hard to show when the inmate was provided with ongoing medical treatment.'"[52]

Moreover, the record in this case is replete with evidence that Plaintiff's HCV was regularly monitored, and he received treatment, albeit treatment with which he disagreed, for all of his medical conditions, including HCV.  Plaintiff's medical records consist of

---

[49] *Id.* at p. 25, line 6.
[50] *Id.* at pp. 29-30.
[51] 2016 WL 1274448 at *7 (E.D. Tex. Feb. 24, 2016)(citing *Sama v. Hannigan*, 669 F.3d 585, 590–91 (5th Cir. 2012); *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006)).
[52] *Id.* (quoting *Fails v. DeShields*, 349 F. App'x 973, 976 (5th Cir. 2009)).
51787

nearly 1000 pages for the time period between 2012 to the present, which further undermines Plaintiff's claim that he received no treatment for HCV. Specifically, the record demonstrates that, during this period, lab work was performed specific to monitoring his HCV, and Plaintiff received ultrasounds of his abdomen.[53] After DAA drugs became available at EHCC, Plaintiff was identified as a candidate to receive them, received lab work to confirm that he was a good candidate, and was prescribed a course of Epclusa, which cured his HCV.[54]

As Defendants point out, similar claims to those raised herein were rejected by the court in *Warren v. Gusman*, wherein a pretrial detainee complained that he received no treatment for hepatitis C while detained by the defendants.[55] Contrary to the plaintiff's complaints, his medical record demonstrated that prison doctors diagnosed the plaintiff with hepatitis C and ordered tests to monitor his health.[56] The *Warren* court relied on the Fifth Circuit's holding in *Harris v. Epps*, wherein the court affirmed summary judgment in favor of prison defendants on the plaintiff's claim of deliberate indifference to his serious medical needs based on alleged denial of treatment for his hepatitis C infection and back problems.[57] The Fifth Circuit held: "The record shows that Harris did receive treatment for those ailments and that his claim amounts to a disagreement with the treatment and a desire for more. That is not enough for a viable claim of deliberate indifference."[58]

Also, in *Calloway v. Gusman*, an inmate complained about insufficient and delayed

---

[53] See e.g., Rec. Doc. 77-7, pp. 5, 7, 9, 19, 21, and 25.
[54] See *infra*, pp. 6-7.
[55] No. 16-15046, 2017 WL 1373875 (E.D. La. Mar. 10, 2017).
[56] *Id.* at *13 (citations omitted).
[57] 523 Fed. Appx. 275 (5th Cir. 2013).
[58] *Id.* (citing *Domino v. Tex. Dep't of Crim. Justice, Institutional Div.*, 239 F.3d 752, 756 (5th Cir. 2001); *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir.1995) (per curiam).
51787

medical care for his hepatitis C.[59]  The court rejected the plaintiff's claims as set forth

below:

> Although plaintiff has alleged delay in receiving medical care and has expressed dissatisfaction with the speed and effectiveness of his treatment, none of his allegations rise to the level of deliberate indifference necessary to establish a constitutional violation cognizable under Section 1983.
>
> First, mere delay in receiving care is not in and of itself a constitutional violation. *Mendoza*, 989 F.2d at 195; *Wesson v. Oglesby*, 910 F.2d 278, 284 (5th Cir.1990); *Simons v. Clemens*, 752 F.2d 1053, 1056 (5th Cir.1985). Regardless of the length of delay, plaintiff at a minimum must show deliberate indifference to serious medical needs. *Wilson*, 501 U.S. at 298. The delay about which plaintiff complains did not cause "a life-long handicap or permanent loss" sufficient to constitute a serious medical need for constitutional purposes. *See Hill v. Dekalb Reg'l Youth Detention Ctr.*, 40 F.3d 1176, 1188 (11th Cir.1994) (citing *Monmouth County v. Lanzaro*, 834 F.2d 326, 347 (3d Cir.1987) ("Where the delay results in an inmate's suffering 'a life-long handicap or permanent loss, the medical need is serious.' ")); *Wesson*, 910 F.2d at 283-84 (minor delay in escorting injured prisoner to prison infirmary for treatment of swollen wrists with some bleeding cannot be construed as deliberate indifference to serious medical needs). No such permanent loss resulting from delay has been alleged in this case.
>
> Contentions like Calloway's that amount to a mere disagreement with the speed, quality or extent of medical treatment or even negligence do not give rise to a Section 1983 claim. "[A]lthough inadequate medical treatment may, at a certain point, rise to the level of a constitutional violation, malpractice or negligent care does not." *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir.1999) (citation omitted) (active treatment of prisoner's serious medical condition, which ultimately resulted in death, does not constitute deliberate indifference, even if treatment was negligently administered); *see Randall*, 2005 WL 1772311, at * 1 (allegations that plaintiff with hepatitis C should have been examined sooner and received different treatment reflect mere negligence and disagreement with treatment decisions); *Norton*, 122 F.3d at 291-92; *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir.1991); *Mendoza*, 989 F.2d at 193 (prisoner's disagreement with the type or timing of medical services provided cannot support a Section 1983 claim); *Wesson*, 910 F.2d at 284 (provision of medical treatment is inconsistent with inference of deliberate indifference). Therefore, plaintiff's complaints in this case about his medical care advance a legally frivolous argument and fail to state a

---

[59] 2006 WL 2710475 (E.D. La. Sep. 20, 2006).
51787

claim for relief under Section 1983.[60]

Plaintiff herein has not argued or presented any summary judgment evidence to establish that the worsening of his condition from Stage 3 Fibrosis to Stage 4 Cirrhosis constitutes a "life-long handicap or permanent loss."  Indeed, Plaintiff has offered no summary judgment evidence to controvert Defendants' assertion that he has been cured of HCV.  This record is also void of any evidence that would demonstrate that Defendants possessed a "culpable state of mind."  Finally, Plaintiff's allegations regarding Defendants' conduct do not rise beyond negligence, and Plaintiff has failed to offer jurisprudential support for an argument to the contrary.

In *Burling v. Jones*, the district court for the Southern District of Texas addressed a case where an inmate-plaintiff complained that, **despite the worsening of his liver condition due to hepatitis C**, the prison medical staff failed to prescribe him Harvoni and were, thus deliberately indifferent to his serious medical needs in violation of the Eighth Amendment.[61]  The court dismissed this claim as frivolous, finding:

> Burling alleged that he was not provided with the proper medication to treat Hepatitis C. The record showing an extended history of examinations, diagnoses, and medications rebuts Burling's allegations of deliberate indifference. *Mendoza v. Lynaugh*, 989 F.2d 191, 193–95 (5th Cir. 1993). Burling has not alleged facts supporting an inference that the medical care provided to him was so inadequate that the defendants knew of and were deliberately indifferent to a substantial risk to Burling's health. As mentioned above, his own pleadings show that he was regularly examined by medical personnel and prescribed medications. (Docket Entry No. 13, pp. 6–7). Burling admitted that he was seen by medical personnel on numerous occasions and prescribed treatment. He indicates that in 2010, he was prescribed Peginterferon and Ribavirin, which has been known to cause more problems in genotype 3 Hep–C. His pleadings show that medical personnel were regularly monitoring his liver function from April 2015 to

---

[60] *Id.* at *8.
[61] 2017 WL 384364 (S.D. Tex. Jan. 24, 2017)(emphasis added).
51787

August 2016. Medical personnel also performed ultrasounds to evaluate Burling's liver function. Burling complains that medical personnel unjustifiably delayed providing him with a newer treatment for Hepatitis C. "Disagreement with medical treatment does not state a claim for Eighth Amendment indifference to medical needs." *Norton v. Dimizana*, 122 F.3d 286, 292 (5th Cir. 1997). Burling has not alleged facts that, if proven, would support the inference that the defendants were aware of, and disregarded, a substantial risk of harm to Burling.[62]

The district court for the Southern District of Mississippi reached the same result in *Hale v. Abangan*, wherein an inmate-plaintiff suffering from hepatitis C claimed deliberate medical indifference where he claimed he was not given adequate treatment and a cure for his hepatitis C.[63]  Noting that "the medical record shows that his disease has been monitored in the chronic care clinic and that he has had no problems[,]"[64] the court found that, "it appears that the gravamen of Hale's claim is that prison officials have wrongly denied him one of the newer drug therapies for the condition."[65]  Following Fifth Circuit precedent, the Court rejected the plaintiff's claim:  "The state's refusal to provide Hale with the very best available treatment does not amount to deliberate indifference."[66]

Courts around the country outside of the Fifth Circuit have reached the same conclusion addressing similar claims.  In *Phelps v. Wexford Health Services, Inc.*, an inmate-plaintiff brought a constitutional claim against prison defendants for deliberate medical indifference because the defendants failed to treat his HCV with Harvoni.[67]  The court granted summary judgment in favor of the defendants, holding:

To be sure, inmates have a constitutional right to adequate medical

---

[62] *Id.* at *3.
[63] 2018 WL 1053520, *2 (S.D. Miss. Jan. 26, 2018).
[64] *Id.*
[65] *Id.*
[66] *Id.* (citing *Davidson v. Texas Dep't of Crim. Justice*, 91 Fed. Appx. 963, 964-65 (5th Cir. 2004) (affirming district court's dismissal of Plaintiff's claim for failure to provide interferon therapy for hepatitis C)).
[67] 2017 WL 528424 (D. Maryland Feb. 8, 2017).
51787

treatment. But, they do [not] enjoy the right to the treatment of their choice. The fact that Phelps is not receiving Harvoni does not reflect deliberate indifference by the Medical Defendants. As shown, Harvoni is not the drug of choice for the DPSCS. Phelps is regularly monitored for his HCV and his test results continue to show an absence of viral load. Further, Phelps has not refuted the information in his verified medical records. Phelps's disagreement with medical providers over whether he should be treated with Harvoni does not rise to the level of a constitutional violation.[68]

In *King v. Calderwood*, an inmate-plaintiff suffering from HCV claimed deliberate medical indifference on the part of the prison defendants, and the court granted summary judgment in favor of the defendants.[69] The plaintiff argued that "he should be provided with a drug called 'Harvoni' which [he] insists is a 'cure' for Hepatitis-C."[70] Nevertheless, the plaintiff's prison doctor concluded that the plaintiff did not require drug intervention at that time.[71] The court concluded:

> As such, Plaintiff's contentions constitute a disagreement regarding the appropriate course of treatment. It is well established that "[a] difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim." *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981). To establish that a difference of opinion amounted to deliberate indifference, a plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances" and "that they chose this course in conscious disregard of an excessive risk to [the plaintiff's] health." *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996). Plaintiff has not provided any evidence to support such a finding.[72]

As set forth above, the Court has discussed several cases across the country wherein every court has held that failing to provide an HCV inmate with Harvoni (or another DAA drug) upon his immediate request does not constitute deliberate medical

---

[68] *Id.* at *9.
[69] 2016 WL 4771065 (D. Nevada Sep. 12, 2016).
[70] *Id.* at *5.
[71] *Id.*
[72] *Id.*

51787

indifference. Considering the foregoing jurisprudence, and the undisputed facts of this case, Defendants are entitled to summary judgment on Plaintiff's Eighth Amendment deliberate medical indifference claim.

### C. Supervisory Liability for Deliberate Indifference

In the Fifth Circuit, "to support a supervisory liability claim, the misconduct of a subordinate must be conclusively linked to the action or inaction of the supervisor.[73] A supervisory official is liable if he or she demonstrates deliberate indifference to a plaintiff's constitutionally protected rights."[74] Deliberate indifference "is 'more blameworthy than negligence' but less blameworthy than purposeful harm.[75] The standard is 'stringent' and requires that the supervisory actor disregarded a known consequence of his action."[76] Moreover, "'[u]nintentionally negligent oversight' does not satisfy the deliberate indifference standard."[77]

The Fifth Circuit has also held that "'doctors may not be held liable for § 1983 violations under a theory of respondent superior or vicarious liability, based upon claimed omissions by the nurses.'[78] A supervisor can, however, be held liable when he was himself deliberately indifferent."[79] To hold a defendant supervisor liable on such a theory, "the plaintiff must show that: (1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and

---

[73] *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 169 (5th Cir. 2010)(citing *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 453 (5th Cir. 1994) (en banc)).
[74] *Id.* (citing *Doe*, 15 F.3d at 454).
[75] *Id.*, quoting *Farmer v. Brennan,* 511 U.S. 825, 835, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).
[76] *Id.*, quoting *Southard v. Tex. Bd. of Crim. Justice*, 114 F.3d 539, 551 (5th Cir.1997).
[77] *Id.* at 170, quoting *Gonzales v. Ysleta Indep. Sch. Dist.,* 996 F.2d 745, 756 (5th Cir. 1993).
[78] *Brauner v. Coody*, 793 F.3d 493, 500 (5th Cir. 2015)(quoting *Stewart v. Murphy,* 174 F.3d 530, 536 (5th Cir.1999)).
[79] *Id.*
51787

the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference."[80]

"Plaintiffs suing governmental officials in their individual capacities ... must allege specific conduct giving rise to a constitutional violation. This standard requires more than conclusional assertions: The plaintiff must allege specific facts giving rise to the constitutional violations."[81] Moreover, "[p]ersonal involvement is an essential element of a civil rights cause of action."[82]

Because the Court has found that Plaintiff suffered no constitutional deprivation, the Court need not consider supervisory liability or any purported policy challenge.[83] The Supervisor-Defendants are entitled to summary judgment on this claim.

### D. Qualified Immunity

Because the Court has found that Plaintiff suffered no constitutional deprivation, the Court need not consider the individual Defendants' assertion of the defense of qualified immunity. However, the Court finds, in the alternative, that the Defendants sued in their individual capacities would be entitled to qualified immunity if Plaintiff could demonstrate a constitutional deprivation.

Qualified immunity is available when a § 1983 suit is brought against a state official in his or her individual capacity, making him or her personally liable for any damages

---

[80] *Id.*, quoting *Smith v. Brenoettsy,* 158 F.3d 908, 911–12 (5th Cir.1998) (internal quotation marks omitted).
[81] *Oliver v. Scott*, 276 F.3d 736, 741 (5th Cir. 2002) (citation omitted).
[82] *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983).
[83] *See Anderson v. Dallas County Texas*, 286 Fed. Appx. 850, 860 (5th Cir. 2008)(citing *City of L.A. v. Heller*, 475 U.S. 796, 799, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986); *see also Trevino v. Ellis County, Texas*, 710 Fed. Appx. 199, 200 (5th Cir. 2018)(Plaintiff failed to demonstrate deliberate medical indifference; court held "Ellis County may not be held liable through the actions of Brown because Brown himself is not liable under § 1983.").
51787

awarded to a plaintiff.[84]  The qualified immunity defense has two prongs: whether an official's conduct violated a constitutional right of the plaintiff; and whether the right was clearly established at the time of the violation.[85]  A court may rely on either prong of the defense in its analysis.[86]  If the defendant's actions violated a clearly established constitutional right, the court then asks whether qualified immunity is still appropriate because the defendant's actions were "objectively reasonable" in light of "law which was clearly established at the time of the disputed action."[87]  To be clearly established for purposes of qualified immunity, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.[88]  This inquiry regarding whether a defendant's actions were objectively reasonable has been described as "a fact-intensive inquiry."[89]

Considering the testimony of Dr. Raman Singh, it is clear that the medical staff at Elayn Hunt were assessing how to implement the new DAA drug protocols for HCV inmates after the drugs were approved by the FDA.  Plaintiff attempts to cast doubt on Dr. Singh's credibility, arguing that he testified that drug costs were "one of the main considerations" in obtaining the new medications, yet he also testified that "money was no hindrance to obtaining the drugs."[90]  The Court finds that this statement mischaracterizes Dr. Singh's testimony.  Dr. Singh actually testified that the costs of the new drugs "was one of many concerns," with other concerns relating to lacking

---

[84] 42 U.S.C. § 1983.
[85] *Manis v. Lawson*, 585 F.3d 839, 843 (5th Cir. 2009).
[86] *Id.*
[87] *Collins v. Ainsworth*, 382 F.3d 529, 537 (5th Cir. 2004) (citations omitted).
[88] *Brown v. Miller*, 519 F.3d 231, 236 (5th Cir. 2008).
[89] *Orr v. Copeland*, 844 F.3d 484, 492 (5th Cir. 2016)(quoting *Galvan v. City of San Antonio*, 435 Fed.Appx. 309, 310–11 (5th Cir. 2010)).
[90] Rec. Doc. No. 81, pp. 5-6.
51787

information based on the newness of the drugs and patient selection criteria.[91] There is no summary judgment evidence that Dr. Singh elevated cost considerations over the many other considerations he discussed regarding the procurement of these new drugs.

Both Britton and Dr. Singh testified regarding the process within the DOC of determining how to implement the new drug protocols for the approximately 5,000 HCV-infected inmates and the need to prioritize treatment for the inmates suffering from the most progressed stages of the disease. This testimony is uncontroverted, and Plaintiff did not offer the Court any jurisprudence or statutory authority to suggest these considerations are not objectively reasonable in the prison context.

Plaintiff also complains that Defendant Britton prescribed DAAs to "Medicaid patients" in 2015;[92] however, Britton's deposition makes clear that those patients were not incarcerated.[93] Non-inmate Medicaid patients are not similarly situated to inmate-patients for purposes of analyzing whether a constitutional violation has occurred. As the Fifth Circuit and district courts within this circuit have repeatedly held:

> [I]t is important to first remember that a prisoner's constitutional right to medical care is extremely limited. For example, if an inmate in fact receives medical treatment, federal constitutional protections are not violated simply because that treatment is unsuccessful or because pain persists despite the treatment.[94] Further, the federal constitution certainly does not require that inmates receive optimal care. The fact that an inmate's medical treatment "may not have been the best money could buy" is insufficient to establish a federal violation.[95]

---

[91] Rec. Doc. No. 81-4, p. 24 (Deposition of Dr. Raman Singh, p. 23, line 6).
[92] Rec. Doc. No. 81, p. 6.
[93] Rec. Doc. No. 77-14, p. 58 *et. seq.*
[94] *Spriggens v. LaRavia*, 2012 WL 1135845 at *2 (citing *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006); *Williams v. Chief of Medical Operations, Tarrant County Jail*, No. 94–10115, 1994 WL 733493, at *2 (5th Cir. Dec. 27, 1994); *Kron v. Tanner*, Civ. Action No. 10–518, 2010 WL 3199854, at *7 (E.D.La. May 19, 2010), adopted, 2010 WL 3171040 (E.D.La. Aug. 6, 2010)).
[95] *Id.* (quoting *Mayweather v. Foti*, 958 F.2d 91 (5th Cir.1992); *see also Gobert*, 463 F.3d at 349; *McMahon v. Beard*, 583 F.2d 172, 174 (5th Cir.1978)).
51787

Accordingly, Plaintiff has failed to demonstrate genuine issues of fact that would preclude the application of the qualified immunity defense for the individual Defendants in this matter as there is no summary judgment evidence suggesting that Defendants' actions were not objectively reasonable under the timing and circumstances surrounding the availability of new HCV drug options. Both Nurse Britton and Dr. Singh testified that the new DAA drugs were not available to the prison until 2016.[96]  Thus, had Plaintiff demonstrated a constitutional deprivation, Defendants would be entitled to qualified immunity.

## III.   CONCLUSION

For the reasons set forth above, Defendants' *Motion for Summary Judgment*[97] is GRANTED.  Plaintiff's case is dismissed with prejudice.

*Judgment* shall be entered accordingly.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana on <u>June 10, 2019</u>.

_____
**CHIEF JUDGE SHELLY D. DICK**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[96] Rec. Doc. No. 77-14 at 34 (Deposition of Elizabeth Britton at 33); Rec. Doc. No. 77-13 at 14 (Deposition of Dr. Raman Singh at 13).
[97] Rec. Doc. No. 77.
51787